*Warren Gard, Wm. M. Ampt* and *James E. Neal,* against the demurrer.

---

## INJUNCTION AGAINST RAILWAY TICKET BROKERS.

[Circuit Court of Cuyahoga County.]

JOHN M. KINNER ET AL v. LAKE SHORE & MICHIGAN SOUTHERN RAILROAD CO.*

Decided, February 10, 1902.

*Railways—Combination of to Maintain Fares—Can not be Attacked Collaterally as Unlawful—In a Suit to Enjoin Ticket Brokers from Dealing in Non-transferable Tickets—Application of the Maxim as to Clean Hands—Public Policy—Injunction—Contracts.*

1. The maxim as to coming into court with clean hands is only applicable to misconduct in regard to or connected with the matter in litigation in such a way that it affects the equitable relations subsisting between the two parties and arising out of the transaction; it does not extend to misconduct, however gross, which is not connected with the matter in litigation and with which the opposite party has no concern.

2. The question of the legality of a combination of railroads, known as the Central Passenger Association, having as its purpose the fixing of passenger fares within a given territory, can not be determined in a suit to enjoin ticket brokers from selling certain limited non-transferable tickets; and such a combination whether lawful or otherwise does not so affect and taint the contract between one of the companies composing the combination and its passengers, that a court of equity will refuse to enjoin ticket brokers from doing with these tickets what they acknowledge to be unlawful.

*Affirmed by the Supreme Court (69 O. S., 339).

3. But a court of equity, unless the contract under consideration is itself unlawful and against public policy, will grant relief by way of injunction to restrain one who is not a party to the contract from seeking to induce others to violate the contract, to accomplish which they must do a wrong that is an offense to a court and amounts to a crime.

4. Where the use of railway tickets by others than the original purchasers can only be effected by fraudulent representations, a court of equity will enjoin brokers from inducing purchasers to buy non-transferabe tickets, issued by a railway company in combination with other companies under a passenger association agreement.

CALDWELL, J.; HALE, J., and MARVIN, J., concur.

Heard on error.

A petition was filed in this case in the court of common pleas by the defendant in error to restrain John M. Kinner and others who are known as ticket brokers in the city of Cleveland from dealing in certain tickets issued by it to persons who were attending the encampment of the Grand Army of the Republic in the city of Cleveland in the month of September, 1901.

The tickets issued by the railway company were for round trips to Cleveland and to a return from the place of starting, and they were made non-transferable and were good only in the hands of the person to whom they were issued, and no other person could use the same except by fraudulently and unlawfully representing himself to be the one named in the ticket, and the party to whom the ticket was issued had entered into a contract evidenced by the ticket wherein he agreed to do all he could to further the intent and purpose of the railway company in issuing the same, and to this end, that he would not transfer it nor use it for any purpose other than that for which it was issued. Many persons attending the encampment by means of such tickets, after coming to Cleveland, undertook to dispose of the same to the plaintiffs in error, and the plaintiffs in error were about to sell and were selling the same to persons to be used upon the railroad of the defendant in error. And, from thus unlawfully dealing in these tickets, this action was instituted and an injunction obtained from the court restraining the plaintiffs in error from dealing in the tickets as above set forth.

These .tickets constituted limited contracts, not transferable, and good only in the hands of the original purchaser. They were also limited as to the time of their use. They could not be used earlier than September 8, 1901, nor later than September 12, of the same year, unless certain arrangements were made in Cleveland through the agent of the railway company, who had power upon the performance of certain conditions stipulated in the tickets to extend the time within which the tickets could be used for a return passage, and, in accepting the ticket, the person agreed to be governed by all the conditions as stated, in the contract; and the tickets had marked upon them, "Account of the Grand Army of the Republic, National Encampment."

First, a motion was made by the defendant below, to vacate the restraining order granted upon the petition, which motion was overruled, and thereupon the plantiff in error answered in that court, and the matters set forth in the answer, so far as necessary to speak of them here, are:

First. The plaintiff was engaged in a fraudulent conspiracy, and that the action brought in the petition was in the furtherance thereof.

Second. That the railway company has no standing in a court of equity by reason of the illegal acts which this suit is brought to protect and execute.

The acts of conspiracy on the part of the railway company are set out in great detail in the answer. Briefly stated, they are: That the railway company in this case, in conjunction with about twenty other railroad companies, entered into a combination and conspiracy for the purpose of suppressing competition among themselves in the business of transporting passengers to and from the encampment. That this was accomplished through what is known as the "Central Passenger Association," and that this association had its office in Chicago; that said association was composed of certain railroads of which the Lake Shore & Michigan Southern is one; and that this association had meetings by agents and representatives of all the companies parties thereto, including an agent and representative of the defendant in error, and that, at such meetings, rates had been fixed and forms of tickets had been agreed upon to be issued

by all the companies to such combination, for the purpose of transporting passengers to and from the city of Cleveland during the said encampment of the Grand Army of the Republic.

Various acts are set out in the answer, done by these companies in furtherance of this unlawful combination, and it is then pleaded that the association of these railroad companies is contrary to the laws of the United States and the state of Ohio; and that all the acts and things done by it in furtherance of the general illegal and unlawful design of the combination, are illegal and ought not to be protected or furthered by the aid of a court of equity.

When the case came on for trial in the court below, the plaintiffs in error put on a witness who was asked many questions in regard to the way in which the Central Passenger Association is made up and in regard to its purposes and rules and regulations and various other matters pertaining to it and tending to connect the Lake Shore & Michigan Southern Railway Company with the Central Passenger Association. Each of these questions was objected to, and the objections were sustained, and counsel for the plaintiffs in error stated in the record what answers would be made to the questions if permitted to be answered, and the statements are responsive to the questions asked.

The sole question made in this action is, whether or not the defendant in error as a member of a combination of railroad companies which had for its object the suppression and competition in violation of the federal statute in such case made, and whether the defendant in error can appeal to a court of equity to protect tickets issued by it of the kind, character and from agreed by said combination to be issued and, after issued, in danger of being fraudulently misused; or, in other words, had the defendant in error such a standing in a court of equity? Were its own hands so clean that a court of equity would intervene to protect it and the contracts or tickets issued by it?

It appears from the record in the case, that whatever was done by the combination known as the "Passenger Association," that the tickets issued and under consideration in this case were issued by each railroad separately, and that the contract of the passenger was with the road over which he took passage and

with no other road, nor was his contract with the passenger association.

The plaintiffs in error insisted that they were not urging that the defendant in error can not be heard in a court of equity because it is a member of this illegal conspiracy, but for the reason that the tickets which it seeks to protect by the aid of a court of equity are themselves the subject-matter of an illegal agreement, each individual ticket being the product and result of, and in furtherance of, the agreement made between the defendant in error and the other roads.

Nor do the plaintiffs in error contend that these tickets are void as contracts between the railroad companies and purchasers. They are sold for a valuable consideration, and are agreements on the part of the railroad company to perform services in return for the money received and that the purchaser may insist upon the performance of that service, and the railroad company can not set up its own wrong to avoid the contract; and they insist that the contention could not be raised with regard to the ticket as a contract between the vendor and the purchaser.

They admit that their act was unlawful in that they were attempting to induce the ticket holders to break the contract which he had with the railroad company, and to accomplish the end sought, it became necessary that they should induce the person to whom they would sell the ticket to commit a fraud upon the railroad company by representing himself to be the person named in the ticket.

The plaintiffs in error do not seek to attack in a legal sense the Central Passenger Association in this proceeding; but say that, in order to accamplish that end, an action would have to be commenced and prosecuted as in *United States* v. *Joint Traffic Assn.*, 171 U. S., 505 (19 Sup. Ct. Rep., 948), and in *United States* v. *Freight Assn.*, 166 U. S., 290 (17 Sup. Ct. Rep. 540), and that they are here not seeking the relief that was obtained in those cases on behalf of the United States but they have narrowed their contention to the claim that if the defendant in error is engaged in an enterprise obnoxious to the federal statute, and the tickets here issued are sought to be protected as in futherance of that enterprise, it can not ask the protection of a court

of equity, and, on this ground alone, it is claimed that the injunction allowed is contrary to law, and that is the question before the court.

It is not necessary to cite authority to the point that a court of equity will not protect the subject-matter of an illegal contract and will not enforce an illegal contract.

The question, then, as we understand it, is this: A number of railroads furnish each a member of an association, which association, it is claimed, is organized for the purpose of keeping up passenger rates and stifling competition, and, hence, is against public policy and contrary to the anti-trust law passed by the congress of the United States in 1890; and that that association took some action in regard to the amount that should be charged for tickets from various states along the line of the railroad to persons attending the encampment.  It is not shown, however, that the association went into such detail, nor that it did anything more than to determine that the persons attending the encampment should have passage thereto and return for one fare; and that, after such association, each railroad for itself made terms and sold the tickets for the round trip for one fare; and after the persons who bought the tickets arrived in Cleveland, the plaintiffs in error undertook to buy the tickets for the return trip contrary to the terms of the contract and in fraud of the defendant in error and illegally and unlawfully; and, thereupon, the defendant in error obtained an injunction against their so dealing with these tickets.

Under these facts, will a court of equity refuse the defendant in error relief against such unlawful dealing?

The defendant in error relies almost wholly upon the case of *Delaware, L. & W. R. R. Co.* v. *Frank*, 110 Fed. Rep., 689, in the United States Circuit Court for the Western District of New York.

That case is the one wherein the railroads made special terms to persons attending the Pan-American at Buffalo.  It appears that the combination there made was, that the railroads agreed to pool their roads and their earnings upon such tickets and, at a time, divide the proceeds upon some basis determined by the association.  In that regard  the case differs from the one under consideration.

The defendant in error cites us to a case decided in San Francisco about the same time that Judge Hazel decided the case at Buffalo, and the cases seem to be at variance with each other. In the San Francisco case an injunction was issued restraining scalpers from dealing in Epworth League excursion tickets, and in seeking dissolution of the order, the scalpers' attorney urged that the railroad company did not come into the court of equity with clean hands, and that its combination with the other competing railroads by which the Epworth League scheme was brought about, was in violation of the provisions of the Sherman act by which it was made unlawful for competing railroads to fix rates; and it was urged that on this account, the tickets being themselves unlawful, the railroad could not restrain any one from dealing in them. We have not seen this case reported in any law report, but have been referred to a notice of the same, and in the notice it seems that Judge Murasky decided the case, saying that the rule requiring persons to enter a court of equity with clean hands applies equally to plaintiffs and defendants; and that the defendant, by his own affidavit, showed that he himself was engaged in an unlawful business which involved deceit, false personation and forgery, and that he who asks the court to relieve his shoulders of the burden of an injunction upon any other ground than lack of jurisdiction, is expected to deny the equities of the bill and not to disclose an utter absence of right on his part.

*Nashville, C. & St. L. Ry. Co.* v. *McConnell,* 82 Fed. Rep., 65, is a case much like the one before us, where the injunction was allowed.

In *Baltimore & O. S. W. R. R. Co.* v. *Broome,* in the Superior Court of Cincinnati, an injunction was granted July 9, 1901, the occasion being the Christian Endeavor convention.

The maxim of coming into court with clean hands is confined by courts of equity to misconduct in regard to or connected with the matter in litigation, so that it affects the equitable relations subsisting between the two parties and arising out of the transaction. It does not extend to any misconduct, however gross it is, unconnected with the matter in litigation and with which the opposite party has no concern.

A court of equity will not shut its doors to the wicked and to those who are guilty of violation of law, simply because of the moral state of the person, but will confine the maxim to where the wrong-doing has directly affected the particular matter under consideration by the court. There is no contention in this case as to this matter between the parties hereto. The real question is: Does the illegal contract, set up in the answer, so affect and taint the contract between the railroad company and its passenger that a court will refuse to restrain the plaintiffs in error from doing what they acknowledge to be an unlawful thing.

In *Strait* v. *Harrow Co.,* 51 Fed. Rep., 819, where a suit was brought to enjoin the infringement of a patent, the court say, on page 819:

"Such a combination may be an odious and wicked one, but the proposition that the plaintiffs, while infringing the rights vested in the defendant under letters-patent of the United States, is entitled, to stop the defendant from bringing or prosecuting any, suit therefor because the defendant is an obnoxious corporation, and is seeking to perpetuate the monopoly which is conferred upon it, by its title to the letters-patent, is a novel one, and entirely unwarranted."

Further on, quoting now again, the court say:

"If the defendant had brought suit against the plaintiffs for some breach of contract or violation of its alleged rights, founded upon the combination agreement, then it might become pertinent to inquire into the character of the combination, and ascertain whether the court would enforce any rights growing out of it. But in a suit brought for the infringement of a patent by the owner, any such inquiry, at the behest of the infringer, would be as impertinent as one in respect to the moral character or antecedents of the plaintiff in an ordinary suit for trespass upon his property."

In *Bonsack Mach. Co.* v. *Smith,* 70 Fed. Rep., 383, the plaintiff sued for an injunction against the infringement of a patent, and the defendant set up the conduct of the plaintiffs in attempting to obtain a monopoly, and the court held that it was no defense.

*The Charles E. Wisewall,* 74 Fed. Rep., 802. In this case, the defendants undertook to avoid payment of tonnage charges, on

the ground that the complainant was a member of an association illegal under the Sherman anti-trust act. The language of the court is directly to the point under consideration and is to the effect that the answer was not well taken.

The purchaser of the ticket, having received compensation in part, and the railroad company being ready to fulfill the entire contract, and having dealt with the railroad company in regard to the ticket, he can not take the benefit of his bargain without paying the consideration. He can not receive the benefits of his contract without fully complying with the same himself.

*Dennehy* v. *McNulta*, 86 Fed. Rep., 825, 827. The court say that—

"The mere fact that the corporation as one of the contracting parties may constitute an unjust monopoly, * * * can not serve *ipso facto* to create default or liability on its contracts generally; nor can such fact be invoked collaterally, in any manner to affect in any manner its independent contract obligations or rights."

*LaFayette Bridge Co.* v. *Streator (City)*, 105 Fed. Rep., 729.

These cases are to the effect that the illegal combination of the railroads can not be drawn into a suit in a collateral way; and that the relation between the railroad company and the ticket broker is so far foreign to the action of the passenger association, that it will not avail the plaintiffs in error in this case.

There are many cases cited in the brief of defendant in error which establish the point that courts will refuse to apply this maxim that a person must come into court with clean hands, for the benefit of persons seeking to evade a law. *Chicago* v. *Stock Yards Co.*, 45 N. E. Rep., 430; *Meister* v. *Alber*, 36 Atl. Rep., 360 (85 Md., 73-84); *Lewis & Nelson's Appeal*, 67 Pa. St., 153, 166; *Mossler* v. *Jacobs*, 66 Ill. App., 571; *United Protestant E. G. Congregation* v. *Stegner*, 21 Ohio St., 488; *Norton* v. *Blinn*, 39 Ohio St., 145; *National Distilling Co.* v. *Importing Co.*, 56 N. W. Rep., 864 (86 Wis., 352, 355); *Sylvester* v. *Jerome*, 34 Pac. Rep., 760 (19 Col., 128).

These cases and many others that we have examined establish these propositions:

First—The unlawful combination between the railroad companies can not be tried and determined in this action.

Second—If that combination is unlawful and contrary to the anti-trust law of the United States, still the act of that association is not so directly connected with the contract under consideration that a court of equity will refuse to grant the defendant in error equitable relief.

Third—Unless the contract under consideration is itself unlawful and against public policy, a court of equity will grant relief by way of injunction to restrain one who is not a party to the contract but who is seeking to induce others to violate the same, and to accomplish that end must do a wrong that is offensive to a court of equity and which amounts to a crime.

These conclusions being reached, it is clear that the plaintiffs in error are not entitled to have the judgment below reversed, and the judgment is affirmed.

*Foran, McTight & Baker,* for plaintiffs in error.

*Brewer, Cook & McGowan,* for defendant in error.